UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 25, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:  *Andrew P. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
     Civil No. 23-2443-CDA

Dear Counsel:

On September 7, 2023, Plaintiff Andrew P. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' filings[2] (ECFs 11, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on September 30, 2020, alleging a disability onset of September 15, 2007. Tr. 249-51. Plaintiff's claims were denied initially and on reconsideration. Tr. 120-24, 128-32. An initial hearing was held on August 23, 2022, by an Administrative Law Judge ("ALJ"), during which Plaintiff amended his alleged onset date to September 20, 2020.[3] *See* Tr. 17, 43. Due to technical difficulties with the recording of that hearing, Tr. 42-43, the ALJ held a second hearing on

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on September 7, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment, or in the alternative, a Motion for Remand. *See* ECF 11.

[3] Plaintiff intended to amend his alleged onset date to September 30, 2020. ECF 11-1, at 2.

December 6, 2022, Tr. 36-63. Following the second hearing, on January 31, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[4] during the relevant time frame. Tr. 14-35. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since September 30, 2020, the application date." Tr. 19. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "migraine, generalized anxiety disorder, major depressive disorder, agoraphobia with panic attacks, and obsessive compulsive disorder (OCD)." Tr. 19. The ALJ did not find that Plaintiff suffered from any non-severe impairments. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 20. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except he can lift 25 pounds occasionally and 20 pounds frequently; he can stand/walk six hours out of an eight-hour workday; he can sit six hours out of an eight-hour workday; he can understand, remember, and carry out simple instructions; he cannot perform production paced jobs with "production pace" defined as any job requiring an individual to work with other workers and those other workers would need to rely on that individual to perform a specific task necessary for the completion of a specific process for all of the workers in the process such as assembly line work; he can tolerate occasional interaction with co-workers and supervisors; he can tolerate no interaction with the public; he can tolerate occasional changes in the workplace; and he would be off task accommodated by normal scheduled breaks.

---

[4] 42 U.S.C. §§ 301 et seq.

Tr. 22. The ALJ determined that Plaintiff had no past relevant work, but considered Plaintiff's age, education, work experience, and RFC, when determining that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 27-28. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 28-29.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the ALJ did not afford proper weight to the opinions of Dr. Burnette, Dr. Scribner, and Ms. Dudley, Licensed Clinical Social Worker – Certified ("LCSW-C"). ECF 11-1, at 10-13. Second, Plaintiff argues that the ALJ's RFC presented to the vocational expert ("VE") was legally insufficient. ECF 11-1, at 13-14. Specifically, with respect to the second argument, Plaintiff contends that the RFC does not reflect all of Plaintiff's substantiated physical and mental limitations regarding Plaintiff's (1) need to lie down at times due to migraines, (2) inability to interact with others on even an occasional basis, and (3) time off task and inability to consistently attend work due to his mental health impairments and migraines. ECF 11-1, at 13-16. Defendant counters that substantial evidence supports the ALJ's findings, specifically that the ALJ properly evaluated the persuasiveness of each of the medical source opinions, and that the ALJ's RFC properly considered the relevant evidence and accounted for Plaintiff's limitations. ECF 18, at 6-22.

      A. <u>The ALJ properly evaluated the medical opinion evidence.</u>

The ALJ properly evaluated the medical opinions of Dr. Burnette, Dr. Scribner, and Ms. Dudley, LCSW-C. For claims filed after March 27, 2017, an ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. § 404.1520c). An ALJ must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions . . . in [a claimant's] case record." *Id.* (citing 20 C.F.R. § 404.1520c(b)). "Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions." *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ must "explain how [the

ALJ] considered the supportability and consistency factors" when assessing a source's medical opinion. *Id.* "Supportability generally refers to 'the objective medical evidence and supporting explanations presented by a medical source.'" *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)). In assessing consistency, the ALJ looks to the degree of cohesion between the medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

As to Dr. Burnette's opinion, Plaintiff contends that the ALJ, in finding the opinion unpersuasive, "disregard[ed] [consistent] medical evidence." ECF 11-1, at 11. For example, the ALJ "noted that treatment records indicate Maxalt has been excellent for stopping migraines." *Id.* However, Plaintiff avers that this statement "alone is taken out of context" because the ALJ did not review the entire treatment note. *Id.* Plaintiff notes that the same report states that when he "takes Maxalt it generally calms his symptoms within [a] couple of hours[.]" *Id.* (citing Tr. 569) (alterations in original). The Court rejects this argument. The ALJ considered the medical evidence of Dr. Burnette and found it unpersuasive because it was "not well supported by explanation or consistent with treatment records." Tr. 24. As to consistency, the ALJ found that the "treatment records [did] not indicate triggers of headaches with the [Plaintiff] advised to keep a journal of triggers[.]" Tr. 24. Additionally, the ALJ found that the "treatment records [did] not indicate headaches lasting 14 to 16 hours[.]" Tr. 24. The ALJ found that Dr. Burnette's extreme limitations—that Plaintiff would "generally be precluded from performing even basic work activities" and would need to take unscheduled breaks about three times weekly for two hours in duration during which time he would need to lie down, Tr. 552-55—were unsupported by the objective evidence and inconsistent with the treatment records. Tr. 24. As such, the ALJ found Dr. Burnette's opinion unpersuasive.[5]

Next, Plaintiff argues that the ALJ "ignore[ed] substantial evidence . . . consistent with [Dr. Scribner's and Ms. Dudley's] opinions." ECF 11-1, at 12. The ALJ considered Dr. Scribner's opinion, which included moderate limitations in "[t]he ability to maintain attention and concentration for extended periods," and "[t]he ability to complete a normal work day without interruptions from psychologically based symptoms." Tr. 25-26, 735. Dr. Scribner also opined that Plaintiff had marked limitations in "[t]he ability to complete a normal work week without interruptions from psychologically based symptoms" and "[t]he ability to interact appropriately with the general public." Tr. 735-36. The ALJ found Dr. Scribner's opinion unpersuasive. Tr. 26. As to supportability, the ALJ found her opinion lacking in explanation because "Dr. Scribner indicat[ed] unknown or inability to assess several limitations and [was] unaware of the specifics of [Plaintiff's] anxieties that interfere with his ability to obtain a job." Tr. 26. Additionally, the ALJ found Dr. Scribner's opinion "inconsistent with treatment records." Tr. 25-26. For example, the ALJ determined that the "[o]bjective exams mostly showed dysphoric mood and blunted affect but stable and appropriate affect and that he appeared oriented with cooperative behavior, average intelligence, intact memory, fair to good insight and judgment, intact thought process, normal

---

[5] Plaintiff does not take issue with the ALJ's evaluation of the supportability prong. As such, having explicitly stated that the opinion was unsupported due to a lack of explanation, the ALJ satisfied this prong.

thought content with no suicidal ideation, and no significant appearance or grooming abnormalities[.]" Tr. 26.

The ALJ also considered Ms. Dudley's opinion that Plaintiff had moderate, marked, and extreme limitations in 17 areas of mental functioning. Tr. 25, 732-33. Ms. Dudley also opined Plaintiff would have four absences in an average month. Tr. 733. The ALJ found these opinions unpersuasive because "such restrictive limitations are not supported by Ms. Dudley's narrative that extensively relies on [Plaintiff's] subjective statements some of which are from before the current relevant period as well as general descriptions of his diagnoses," and "such restrictive limitations are not consistent with treatment records." Tr. 25. In finding Ms. Dudley's opinion inconsistent with treatment records, the ALJ referenced the same objective medical evidence that they relied on when evaluating Dr. Scribner's opinion. *See* Tr. 25-26.

Because the ALJ assessed, specifically, the supportability and consistency of Dr. Burnette's, Dr. Scribner's, and Ms. Dudley's opinions, their evaluation comports with the SSA's regulatory framework.[6] *See* 20 C.F.R. § 404.1520c. Moreover, Plaintiff fails to identify any evidence that the ALJ failed to review. Certainly, Plaintiff disagrees with how the ALJ evaluated the persuasiveness of the medical source opinions. But this Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Accordingly, the Court declines Plaintiff's invitation to engage in a *de novo* review of Dr. Burnette's, Dr. Scribner's, and Ms. Dudley's opinions.

> B. <u>The ALJ did not err by excluding from the RFC the need to lie down or take unscheduled breaks.</u>

A careful review of the ALJ's decision makes clear that the ALJ amply supported the RFC determination with substantial evidence. A claimant's RFC is "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical

---

[6] In passing, Plaintiff faults the ALJ for failing "to address each of the factors in 20 C.F.R. § 416.920c." ECF 11-1, at 11. For claims filed after March 27, 2017, an ALJ is not required to evaluate each factor. *See* 20 C.F.R. § 416.920c(b)(2). Because the ALJ assessed the supportability and consistency of the medical opinions and an ALJ's consideration of the remaining factors in 20 C.F.R. § 416.920c is discretionary, the Court detects no error in the ALJ's decision whether to consider these factors. *See* 20 C.F.R. § 416.920c(b)(2) (explaining that an ALJ "may, but [is] not required to," consider the factors in 20 C.F.R. § 416.920c(3)-(5) in assessing medical opinions).

evidence[.]" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In cases that reach step five of the sequential evaluation process, an ALJ must pose hypothetical questions to a vocational expert to determine whether the claimant's RFC precludes them from performing jobs existing in substantial numbers in the national economy. *See Johnson*, 434 F.3d at 659.

Here, the ALJ engaged in a narrative discussion of Plaintiff's medical evidence spanning six pages and citing to specific evidence in the record. Tr. 22-27. The ALJ also explained how this evidence, along with Plaintiff's testimony and the opinions of medical professionals, led to their conclusion that Plaintiff can perform light work with certain physical and mental limitations. Tr. 22, 27. After discussing the evidence, the ALJ concluded that Plaintiff had no more than moderate limitations in any area of mental functioning and assessed the RFC accordingly, with accommodations for his mental impairments and migraines. *See* Tr. 27.

Plaintiff argues that "the ALJ's RFC does not contain any limitations relating to [his] need to lie down, or even to take unscheduled breaks, due to his migraines." ECF 11-1, at 14. Plaintiff cites multiple portions of the transcript that he believes the ALJ failed to properly evaluate. *Id.* However, the ALJ assessed the exact evidence Plaintiff cites. For example, the ALJ considered Plaintiff's testimony that "he has migraines two to three times a week that can last 14-18 hours with need to sleep during peak pain that lasts about six hours" and that "he naps one to three times a day for a combined six to seven hours." Tr. 23, 52-55. The ALJ recognized that Plaintiff's migraines worsened since the prior ALJ decision, from March 2020, where his migraines were found not severe. Tr. 23. The ALJ considered that Plaintiff's primary care provider treats Plaintiff "for migraine without aura, not intractable without status migrainous." Tr. 23. The ALJ observed that, at an August 2021 primary care visit, Plaintiff "reported migraines three times per week with Maxalt helping quite a bit and generally calming symptoms within a couple of hours without disabling migraines," and the doctor prescribed Nurtec and Propranolol as needed for additional symptoms. Tr. 23. The ALJ also observed that "it was noted Maxalt had been excellent for stopping migraines while other records noted [Plaintiff] was able to run five miles and weightlift after taking medication" at a February 2022 visit. Tr. 23. The ALJ considered that, in August 2022, Plaintiff "reported migraines three to four times weekly with Maxalt helping limit duration and only leaving him partially debilitated for a few hours with need to law down on those days, but in September 2022, it is noted he stopped using Propranolol which may explain increased headache frequency." Tr. 23. The ALJ further noted Plaintiff's records from the relevant period "showed he appeared in no apparent distress, ambulated normally, and had normal mental status." Tr. 23. The ALJ found persuasive the opinion of Dr. Jay Shaw, a state agency medical consultant, who considered Plaintiff's migraines in the assessment and opined that Plaintiff "could lift/carry 25 pounds occasionally and 10 pounds frequently, stand/walk six hours out of an eight-hour workday, and sit six hours out of an eight-hour workday." Tr. 25.

Despite Plaintiff's hearing testimony, the objective medical evidence examined by the ALJ supported their conclusion that Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . physical symptoms . . . are inconsistent because the evidence does not support the severity and duration of migraines as testified." Tr. 23. The Fourth Circuit has held that

"[a]lthough a claimant's allegations about [their] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers[.]" *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996); *see also Gross v. Heckler*, 785 F.2d 1163, 1165-66 (4th Cir.1986) (finding the claimant's claim that he was disabled not credible when "[h]is arthritis responded to conservative treatment, and his stomach pains were relieved by antacids. If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Here, Plaintiff disagrees with the ALJ's conclusions, which are supported by substantial evidence. *See* ECF 11-1, at 14. Moreover, Plaintiff does not identify any relevant medical records or testimony that the ALJ failed to consider or that the ALJ failed to resolve any evidentiary contradictions. Plaintiff's argument again amounts to a request to reweigh evidence and, once again, must fail.

### C. The ALJ did not err by excluding from the RFC more restrictive social limitations.

Next, Plaintiff argues that although the ALJ's RFC found Plaintiff "capable of occasionally interacting with coworkers and supervisors . . . the substantial evidence supports more restrictive social limitations." ECF 11-1, at 14. The ALJ determined that despite Plaintiff's severe impairments of generalized anxiety disorder, major depressive disorder, agoraphobia with panic attacks, and OCD, and the alleged severity of his symptoms and functional limitations, Plaintiff was no more limited than reflected in the RFC. Tr. 24. The ALJ based this upon "the objective evidence, [Plaintiff's] treatment, and his activities of daily living." Tr. 24. The ALJ concluded "the evidence indicates [Plaintiff] struggles with recurrent, persistent, or unwanted and distressing thoughts that would support moderate limitations regarding interact[ing] with others[.]" Tr. 26.

To be sure, the ALJ thoroughly discussed Plaintiff's mental impairments and his functional limitations. Tr. 22-27. The ALJ observed that the record indicates Plaintiff "has waxing and waning of symptoms relative to mood, lack of motivation, anxiety, panic attacks, obsessive thinking or recurrent, persistent, unwanted, and distressing thoughts, and sleep but with some improvements in symptoms and ability to utilize coping skills to handle stressors," and that objective exams "mostly showed dysphoric mood and blunted affect but stable and appropriate affect and that he appeared oriented with cooperative behavior[.]" Tr. 24. The ALJ considered that Plaintiff's condition is "stable on medication," and that "[d]espite his testimony regarding medication side effects, treatment records indicated he has no side effects from medication." *Id.* The ALJ further observed that Plaintiff "has relatively functional activities of daily living." *Id.* Indeed, the ALJ accommodated for Plaintiff's limitations through occasional interaction with co-workers and supervisors and no interaction with the public. Tr. 22, 27. Here, Plaintiff points to the exact evidence that the ALJ discussed in contemplating their narrative regarding his mental impairments. As explained above, the ALJ evaluated Ms. Dudley's medical opinion, using the proper framework, and found her opinion unpersuasive because the restrictive limitations were unsupported by Ms. Dudley's narrative and inconsistent with treatment records. Tr. 25. For a third time, Plaintiff seeks reweighing evidence, which the Court will not do.

D. <u>The ALJ did not err by excluding from the RFC time off-task and inability to consistently attend work.</u>

Plaintiff argues that "the ALJ's RFC fails to adequately account for [his] time off task and inability to attend work on a consistent basis due to his mental health symptoms and migraines." ECF 11-1, at 15. Specifically, Plaintiff avers that "the ALJ does not explain in [their] decision how or why normally scheduled breaks would be sufficient to accommodate [Plaintiff's] time off task, and such a finding is inconsistent with the evidence." *Id.*

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

Here, at step three, the ALJ concluded Plaintiff had a moderate CPP limitation. Tr. 21. The ALJ's RFC states Plaintiff "can understand, remember, and carry out simple instructions; he cannot perform production paced jobs . . . ; he can tolerate occasional interaction with co-workers and supervisors; he can tolerate no interaction with the public; he can tolerate occasional changes in the workplace[.]" Tr. 22. The ALJ included a limitation for "off task accommodated by normal scheduled breaks." Tr. 22.

As an initial matter, Plaintiff correctly observes that the RFC does not adequately accommodate his CPP limitation by accommodating time off-task with normal scheduled breaks. ECF 11-1, at 15. This Court has recognized that such a limitation alone is insufficient to account for moderate CPP limitations because normal breaks are customary even for workers *without* CPP limitations. *See Richardson v. Berryhill*, No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018) ("The ALJ's finding that [claimant] can perform work in two-hour increments with

normal breaks does not adequately account for [his] ability to concentrate and stay on task."); *Ludlow v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016) (noting that an ALJ's "restriction to working in 2-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation," and "does not account for any breaks in addition to those encompassed by a normal workday"); *see id.* (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996) for the proposition that "a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

Had this provision been the only limitation in the RFC accounting for Plaintiff's CPP difficulties, Plaintiff's argument may have been persuasive. But such is not the case here. While the RFC did not adequately account for Plaintiff's moderate CPP difficulties by accommodating for time off task with normal scheduled breaks, the RFC *did* account for Plaintiff's CPP issues by precluding him from performing "production paced jobs."[7] Tr. 22. This Court has previously held that this restriction adequately accounts for a claimant's moderate CPP limitation. *See Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (holding that an ALJ's inclusion of a restriction from "assembly-line work" in a hypothetical to a vocational expert was sufficient to account for a claimant's moderate CPP limitation even though the ALJ did not include the term "assembly line work" in the RFC). This Court has further held that similarly worded limitations are likewise sufficient. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where coworkers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation). Moreover, Plaintiff fails to identify any evidence that the ALJ failed to review. Certainly, Plaintiff disagrees with how the ALJ considered the evidence related to his physical and mental limitations. For a fourth time, the Court rejects the argument to reweigh evidence.

### E. The ALJ's RFC presented to the VE is sufficient.

Plaintiff's final argument contends that the VE's testimony regarding off-task time, unscheduled absences and breaks, rare interaction with supervisors, and no interaction with co-workers should have been incorporated into the RFC. ECF 11-1, at 14; *see* Tr. 61-62. Even though Plaintiff's attorney posed various hypotheticals to the VE regarding these limitations, an ALJ is not required to adopt the VE's suggested limitations. *See France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)) ("[A]n ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ."). As such, the ALJ did not err by failing to incorporate the VE's testimony of these limitations into the RFC.

---

[7] Plaintiff does not challenge the RFC's "production paced" limitation on appeal.

*Andrew P. v. O'Malley*
Civil No. 23-2443-CDA
September 25, 2024
Page 10

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 11, is DENIED and Plaintiff's alternative motion for remand, ECF 11, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge